

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NOS. 02-10-00157-CR
### 02-10-00158-CR

RENEE CECILE BLACK                                               APPELLANT

V.

THE STATE OF TEXAS                                                     STATE

----------

### FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

Appellant Renee Cecile Black appeals following her convictions in two cases for separate incidents of possession of more than four but less than 200 grams of methamphetamine. The trial court placed Appellant on deferred adjudication in the first case on November 19, 2008. She was indicted again on May 11, 2009, with a new offense of intentionally or knowingly possessing

---

[1]*See* Tex. R. App. P. 47.4.

methamphetamine on April 15, 2009, and the State filed a petition to proceed to adjudication on the first case. After the trial court denied her motion to suppress, Appellant pleaded true to the first offense and guilty to the new offense, and the trial court proceeded to adjudication and sentenced her to fifteen years' confinement in each case with the sentences to run concurrently. Appellant contends in two points on appeal that the trial court abused its discretion by denying her motion to suppress because her consent to a search of her home that resulted in the police finding methamphetamine in the desk drawer of her residence in 2009 was coerced and not freely and voluntarily given. We affirm.

## II. Background

Detective Pat Blauser of the Fort Worth Police Department testified at the suppression hearing that he assisted in an investigation concerning stolen property at Appellant's residence on April 15, 2009. Detective Blauser and his partner, Detective Mapes, arrived at Appellant's residence in an unmarked vehicle and in plain clothes. They posed as buyers interested in purchasing some items that Appellant had listed for sale on Craigslist. A burglary victim had previously identified the items listed on Craigslist as being stolen from his property. The stolen property included, among other items, a toolbox, assorted tools, a generator, a Honda motorcycle, tie-down straps, and household appliance fans.

Upon arrival at Appellant's residence, the officers engaged in conversation with her regarding purchasing items that were sitting in Appellant's front yard. Within approximately ten minutes of arriving at Appellant's residence, the

2

detectives had confirmed their suspicions that the property in her yard was the property that had been reported stolen, and they informed Appellant that they were detectives and that the items she was selling were stolen. Detective Blauser testified that Appellant's residence had "a junk-yard appearance" in that it housed various items that were sorted and stored in different areas. Appellant told the detectives that her business was to sell items on eBay. Appellant testified at the suppression hearing and denied knowing that any of the items were stolen before the detectives informed her of that fact.

The detectives asked Appellant if she would sign a consent to search form so that they could check the property for any additional stolen items. Detective Blauser testified that they wished to check the home and property for other stolen items or evidence—such as business records or receipts—that would prove that Appellant was running a fencing operation. They also were not certain that they had recovered all of the stolen items. Appellant testified that when the detectives asked to search her house, she assumed they were looking for large items like the Honda motorcycle and the other items that they had just identified as stolen.

When the detectives asked for her consent, they twice told Appellant that she was free to consult with an attorney before signing the consent to search form. Appellant testified that she had left her cell phone inside the house and that she did not read the consent form because her glasses were also inside the house. But Detective Blauser testified that, prior to signing, Appellant read and reviewed the form, which states that the consenting party voluntarily waives and surrenders any rights and gives permission to search. Appellant testified that

she did not believe that she had the right to withhold consent because a condition of her probation for possession of methamphetamine required her to consent to searches of her residence by a peace officer without a warrant. But Appellant also testified that from before the time she signed the consent to search form through the time of the search itself, the detectives were polite and did not handcuff or arrest her. She also said that she was comfortable and was allowed to walk around the property as the officers searched. Appellant further testified that she did understand that the officers were going to look around and that, although she did not understand that they would look through the papers in her desk drawer, she did not withdraw her consent when Detective Blauser began searching her desk.

After Appellant signed the consent to search form, the detectives began their search with a sweep of Appellant's residence, including a search of her desk and computer, which appeared to be the center of operations for her eBay business. Inside one of the desk drawers, Detective Blauser found a metal box, approximately twelve-by-twelve inches. When he looked inside the box, he found two baggies of a substance later identified as methamphetamine, bags that are typically used for the distribution of illegal narcotics, and a scale. Appellant was standing in the room and watched as Detective Blauser searched the desk.

### III. Applicable Law

**A. Standard of Review**

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex.

4

Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the

trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818.

When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819.

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

## B. Consent to Search

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the

6

presumption of proper police conduct. *Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App. 2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672. Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

Whether a search is reasonable is a question of law that we review de novo. *Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004). Reasonableness is measured by examining the totality of the circumstances. *Id.* at 63. It requires a balancing of the public interest and the individual's right to be free from arbitrary detentions and intrusions. *Id.* A search conducted without a warrant is per se unreasonable unless it falls within one of the "specifically defined and well-established" exceptions to the warrant requirement. *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App.), *cert. denied*, 541 U.S. 1004 (2003); *see Best*, 118 S.W.3d at 862. One of these exceptions is searches conducted pursuant to the suspect's voluntary consent. *McGee*, 105 S.W.3d at 615. Where consent to search has been validly obtained, neither probable cause nor exigent circumstances are required to justify a warrantless search. *State v. Bagby*, 119 S.W.3d 446, 450 (Tex. App.—Tyler 2003, no pet.).

For a consent to search to be valid, the consent must have been voluntarily given and not be the result of duress or coercion, either express or

7

implied. *Reasor v. State*, 12 S.W.3d 813, 817–18 (Tex. Crim. App. 2000). Whether consent was voluntarily given is a question of fact to be determined from the totality of the circumstances surrounding the consent. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App.), *cert. denied*, 537 U.S. 1051 (2002); *Reasor*, 12 S.W.3d at 818. The State bears the burden of proving that such consent was voluntary. *Rayford v. State*, 125 S.W.3d 521, 528 (Tex. Crim. App. 2003), *cert. denied*, 543 U.S. 823 (2004). The United States Constitution requires the State to prove the validity of the consent by a preponderance of the evidence; the Texas constitution requires proof by clear and convincing evidence. *Id.*; *Maxwell*, 71 S.W.3d at 281.

Factors courts consider in determining voluntariness include the age, education, and intelligence of the individual; the constitutional advice given to the individual; the repetitiveness of the questioning; and whether physical punishment was used. *Reasor*, 12 S.W.3d at 818. Testimony by law enforcement officers that no coercion was involved in obtaining the consent is also evidence of the consent's voluntary nature. *Martinez v. State*, 17 S.W.3d 677, 683 (Tex. Crim. App. 2000). Although a police officer's failure to inform an individual that he can refuse consent is a factor to consider, the absence of such information does not automatically render the consent involuntary. *United States v. Galberth*, 846 F.2d 983, 988 (5th Cir. 1988); *Johnson*, 68 S.W.3d at 653. Texas courts have decided numerous cases where the suspect's consent was deemed voluntary when the officers were in plain clothes and identified themselves as officers before requesting consent to search. *See State v.*

8

*Velasquez*, 994 S.W.2d 676, 677–79 (Tex. Crim. App. 1999); *Hunter v. State*, 955 S.W.2d 102, 104–06 (Tex. Crim. App. 1997); *Hall v. State*, 828 S.W.2d 224, 225–26 (Tex. App.—Fort Worth 1992, no pet.).

The standard for measuring the scope of an individual's consent is that of objective reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the individual? *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S. Ct. 1801, 1803–04 (1991); *United States v. Mendoza-Gonzalez*, 318 F.3d 663, 667 (5th Cir.), *cert. denied*, 538 U.S. 1049 (2003). The question is not to be determined on the basis of the subjective intentions of the consenting party or the subjective interpretation of the searching officer. *Mendoza-Gonzalez*, 318 F.3d at 667. Rather, the scope of a search is typically "defined by its expressed object." *Jimeno*, 500 U.S. at 251, 111 S. Ct. at 1804. While an individual may specifically limit the scope of a search or revoke his consent, explicit authorization to search a particular container is not required if the expressed object of consent would lead a reasonable person to understand that consent extends to that container. *Id.* at 252, 111 S. Ct. at 1804*; Valtierra v. State*, 310 S.W.3d 442, 450 (Tex. Crim. App. 2010). An individual's silence in the face of an officer's further action may imply consent to that action. *Valtierra*, 310 S.W.3d at 449.

## IV. Discussion

In her two points, Appellant argues that the trial court abused its discretion by denying her motion to suppress because her consent to search was not voluntarily given and that the search therefore violated the Fourth and Fourteenth

Amendments of the United States Constitution; article I, section 9 of the Texas constitution; and article 38.23 of the Texas Code of Criminal Procedure.

In *Sanchez v. State*, the court found that the consent to search form signed by Sanchez was valid. No. 01-02-01068-CR, 2003 WL 22511493, at *3 (Tex. App.—Houston [1st Dist.] Nov. 6, 2003, no pet.) (mem. op., not designated for publication). In that case, Sanchez's father was on community supervision for aggravated sexual assault of a child, and he was living with Sanchez. *Id.* at *1. Sanchez arrived home to find police officers in his residence with his father. *Id.* Officers asked Sanchez for written permission to search his home, as they believed his father was in possession of child pornography. *Id.* Sanchez agreed and signed the consent to search form. *Id.* The officers proceeded to search the entire house for child pornography and found a canister of marijuana in a bag next to Sanchez's bed, cocaine in plain view on his dresser, and a clear plastic bag containing cocaine residue inside a vase in Sanchez's room. *Id.* The court found that Sanchez voluntarily signed the consent to search form because (1) there was nothing in the record to suggest that the officers threatened or intimidated Sanchez, (2) Sanchez was never handcuffed, (3) none of the officers pulled their weapons, (4) the express language of the consent form notified Sanchez of his right to refuse consent, (5) Sanchez had a twelfth-grade education and could read and write, and (6) Sanchez signed the consent form. *Id.* at *2–3. The court further determined that the consent to search form was of sufficient scope to allow officers to search containers in Sanchez's bedroom because the form covered the entire house and the officers were looking for any

10

kind of pornographic material, which could include photographic negatives. *Id.* at *3. Thus, it was reasonable for officers to search any container in Sanchez's bedroom that could have contained such negatives. *Id.* Further, Sanchez followed the officers during their search and did not indicate at any time that he wanted the search to stop. *Id.*

This case is similar to *Sanchez*. Viewing the record in the light most favorable to the trial court's decision, it was objectively reasonable, based on the totality of the circumstances, to believe that Appellant voluntarily consented to the search of her residence. While Appellant did not ultimately contact an attorney, the detectives twice told her that she was free to do so. Appellant testified that she did not read the consent form because she did not have her glasses, but Detective Blauser testified that Appellant did read the form. Further, the record indicates that there was no reason that she could not have retrieved her glasses or asked one of the detectives to read the form to her. In fact, Appellant testified that she was free to walk around, and the detectives were polite to her and did not handcuff or arrest her prior to the search of her house. The detectives identified themselves as police officers prior to their request for permission to search and asked permission to search her home. Appellant voiced no objection to the search, she signed the consent to search form, and the detectives did not place Appellant under any physical or emotional duress. Because the detectives were not required to inform Appellant of her right to refuse consent and the trial court is free to determine the credibility of witnesses, the trial court did not err by finding under either the federal or Texas evidentiary

standards that Appellant's consent was voluntary. *See Johnson*, 68 S.W.3d at 653; *Sanchez,* 2003 WL 22511493, at *3.

Moreover, it was reasonable for the trial court to determine that the consent to search extended to the box inside the desk drawer in Appellant's home. The police report indicates that the detectives requested consent to check the property for any additional stolen items. Appellant told police that her business was to sell items on eBay and that the items the detectives identified as stolen were to be sold on eBay as well. Detective Blauser testified that the detectives were seeking additional stolen items and evidence that Appellant ran a business fencing stolen items. The consent form itself advised Appellant of her right to refuse consent and stated that the consent included the removal of objects and documents that the officers reasonably believed were evidence to be used in a subsequent criminal proceeding. Moreover, Appellant did not revoke her consent or limit the scope of the search when she saw that Detective Blauser was searching her desk. Thus, it was objectively reasonable for the detectives to believe that the consent to search extended to the cash box inside of the desk drawer in Appellant's house. *See Sanchez*, 2003 WL 22511493, at *3. Deferring, as we must, to the trial court's credibility determinations and viewing the record in the light most favorable to the trial court's decision to deny Appellant's motion to suppress, we hold that the trial court did not err by concluding that Appellant's consent to search was freely and voluntarily given and that the State met its burden of establishing the voluntariness of Appellant's consent under both the federal and Texas evidentiary standards. *Kelly*, 204

12

S.W.3d at 818; *Maxwell*, 73 S.W.3d at 281.  We overrule each of Appellant's two points.

## V.  Conclusion

Having overruled both of Appellant's points, we affirm the trial court's judgments.

ANNE GARDNER
JUSTICE

PANEL:  GARDNER, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 18, 2011